1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

HEKO SERVICES, INC, a Washington
Corporation,

10

Plaintiff,

11

v.

12

CHEMTRACK ALASKA, INC., an
Alaskan Corporation,

13

14

Defendant.

Case No. 2:18-cv-01587-RAJ

ORDER GRANTING IN PART
AND DENYING IN PART
PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT

15

16

## I.   INTRODUCTION

17      This matter is before the Court on the motion for summary judgment filed by

18  Plaintiff Heko Services, Inc. ("Heko").  Dkt. # 15.  For the reasons below, the motion is

19  **GRANTED in part** and **DENIED in part**.

20

## II.   BACKGROUND

21      The case involves a time charter between Heko and Defendant ChemTrack Alaska,

22  Inc. ("ChemTrack").  Under the terms of the time charter, Heko agreed to prove a tug and

23  barge for ChemTrack to ship up to 7,400 tons of contaminated soil from Naknek, Alaska

24  to Elliot Bay in Seattle, Washington.  Dkt. # 16-1 at 12.

25      Although negotiations had been ongoing for some time prior, the parties reduced

26  the time charter to writing by May 2018.  *Id*.  The time charter included the following

27  relevant provisions concerning hire, charges, and payment:

28  ORDER – 1

> Charterer shall pay Owner the "LUMP SUM HIRE" [of $925,000], which shall be fully and irrevocably earned upon commencement of services, even if the Tug, Tow, and/or cargo is lost and/or the voyage is delayed, frustrated, or cancelled.
>
> …
>
> Owner shall invoice Charterer and payment for the contract "LUMP SUM HIRE" shall be due as follows:
> - 20% upon contract execution
> - 40% upon first arrival at the Starting Port
> - 40% upon first arrival to Offloading Port

*Id.* at 14. The time charter also outlined several inclusions and exclusions. Under the time charter, ChemTrack would receive 48 consecutive hours from the barge's arrival in Naknek to load the soil before a demurrage rate of $750 per hour applied and 72 consecutive hours from the barge's arrival in Elliot Bay to offload the soil and return the barge before a demurrage rate of $200 per hour applied. *Id.* at 13. Fuel and lubricating oils were deemed part of the lump sum hire amount, subject to increases to a baseline fuel cost per gallon of $1.80. *Id.* at 14. In addition, ChemTrack was solely responsible for loading and adequately packaging the cargo "to withstand the hazards of cargo handling and transportation by open decked barge." *Id.* at 13. If ChemTrack used Heko's crewmembers to assist with cargo handling, they would be deemed borrowed servants of ChemTrack, with ChemTrack solely responsible for all loss, damage, or liability involving the cargo. *Id.* at 14. Lastly, Heko agreed to be responsible for all loss, damage, expense, liability or claims applicable to the barge, even if resulting from the negligence of ChemTrack, and ChemTrack agreed to the same with respect to its cargo. *Id.* at 15. The lone exception to this allocation of liability was if the Vessel was damaged during ChemTrack's use of the barge to load, stow, trim, secure, or discharge its cargo. *Id.*

It is undisputed that the transit did not go as planned. For one, there were issues loading the barge with cargo and equipment. In addition to ChemTrack's soil, the barge contained two cranes belonging to Heko as well as cargo belonging to other third parties.

ORDER – 2

Dkt. # 16-3 at 5; Dkt # 18, ¶ 19. After ChemTrack's loaded its soil onto the barge and covered it with a liner, some crane parts were loaded on top. Dkt. # 19-1 at 32-33. Several days after the barge departed, in the vicinity of Unimak Pass, Alaska, the tug and tow encountered severe weather. For reasons that are disputed, the cargo became wet with seawater and tons of soil were lost overboard. Dkt. # 16-4 at 4; Dkt. # 19-1 at 122-127. The tug master diverted the tug and barge to the Port of Sand Point in Alaska, where Heko and ChemTrack reloaded the barge, before it proceeded to Elliot's Bay. Dkt. # 16-4 at 6-7; Dkt. # 19-1 at 48-51, 122-127.

On October 30, 2018, Heko brought this action alleging that ChemTrack breached several sections of the time charter. Dkt. # 1. On November 21, 2018, ChemTrack answered the complaint and later counterclaimed for damages related to Heko's purported breaches of the time charter. Dkt. # 9, 13. On September 17, 2019, Heko filed a motion for summary judgment. Dkt. # 15. On October, 7, 2019, ChemTrack responded to the motion and on October 22, 2019, Heko filed its reply. Dkt. ## 17, 22.

### III. LEGAL STANDARD

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the moving party will have the burden of proof at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party. *Soremekun v. Thrifty Payless, Inc*., 509 F.3d 978, 984 (9th Cir. 2007). On an issue where the nonmoving party will bear the burden of proof at trial, the moving party can prevail merely by pointing out to the district court that there is an absence of evidence to support the non-moving party's case. *Celotex Corp*., 477 U.S. at 325. If the moving party meets the initial burden, the opposing party must set forth specific facts showing that there is a genuine issue of fact for trial in order to defeat the motion. *Anderson v. Liberty Lobby*, *Inc*., 477 U.S. 242, 250

ORDER – 3

(1986). The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Reeves v. Sanderson Plumbing Prods*., 530 U.S. 133, 150-51 (2000).

Despite this mandate, the court need not, and will not, "scour the record in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th Cir. 1996); *see also White v. McDonnel-Douglas Corp*., 904 F.2d 456, 458 (8th Cir. 1990) (the court need not "speculate on which portion of the record the non-moving party relies, nor is it obliged to wade through and search the entire record for some specific facts that might support the nonmoving party's claim"). The opposing party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co*., 952 F.2d 1551, 1558 (9th Cir. 1991). Uncorroborated allegations and "self-serving testimony" will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc*., 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987).

## IV. DISCUSSION

The courts interpret and resolve disputes concerning maritime contracts according to federal law. *See Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 23 (2004); *Strrag v. Maersk, Inc*., 486 F.3d 607, 616 (9th Cir. 2007). "Since the bill of lading is a contract of carriage between shipper and carrier, familiar principles of contract interpretation govern its construction." *Yang Ming Marine Transport Corp. v. Okamoto Freighters, Ltd*., , 1092 (9th Cir. 2001) (quoting *Henley Drilling Co. v. McGee*, 36 F.3d 143, 148 n. 11 (1st Cir.1994)). "Contract terms are to be given their ordinary meaning," and "[w]henever possible, the plain language of the contract should be considered first." *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999). "A basic principle of contract interpretation in admiralty law is to interpret, to the extent possible, all the terms in a contract without rendering any of them meaningless or superfluous."

ORDER – 4

*Strrag*, 486 F.3d at 616 (quoting *Chembulk Trading LLC v. Chemex Ltd.*, 393 F.3d 550, 555 (5th Cir. 2004).

Heko claims that ChemTrack is liable as a matter of law for costs related to the diversion to Sand Point, for the unpaid portion of the time charter's $925,000 lump sum hire, and for costs related to loading and unloading the barge. Dkt. # 15. For costs related to loading and unloading, Heko specifically seeks summary judgment on the following: (i) demurrage costs; (ii) fuel costs; (iii) charges and expenses accruing during the charter term; (iv) cargo handling costs; (v) damages due to unloading at Elliot's Bay. Heko also seeks summary judgment as to ChemTrack's counterclaims. *Id.*

As an initial matter, the Court finds genuine disputes of material fact over what caused the soil to shift and go overboard, thereby necessitating a diversion to Sandpoint. While Heko contends that it was due to an improper stow plan and ChemTrack's failure to properly load its soil onto the barge, ChemTrack presents evidence that had Heko's crane been loaded differently, the diversion would not have been necessary. Dkt. # 19-1 at 97 (noting the possibility that the crane shifted and helped self-level the dirt); *id.* at 123 (explaining that had the cranes been loaded "on trim" the diversion would not have been necessary).[1] Accordingly, the Court denies Heko's motion as it relates to liability or damages for the Sand Point diversion.

The Court will address the remaining issues in turn.

---

[1] In its reply, Heko argues that the Court must strike the portions of ChemTrack's response relying on the "opinion" of Peter Costello, an undisclosed expert witness. Dkt. # 2. However, neither ChemTrack nor Costello is purporting that he is an expert in this case. In fact, he appears to have had first-hand percipient knowledge of the events in dispute. *See* Dkt. # 19-1 at 122 (stating that Costello attended the re-stow at Sand Point for purposes confirming the fitness of the stow for voyage). While the Court agrees that the document relied upon by ChemTrack has not yet been properly authenticated, the Court does not "focus on the admissibility of the evidence's form" at the summary judgement stage, but rather "focus[es] on the admissibility of its contents." *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003). Objections on the basis of a failure to comply with the technicalities of authentication requirements are, therefore, inappropriate. *See, e.g.*, *Adams v. Kraft*, 2011 WL 5079528, at *25 n. 5 (N.D. Cal. Oct.25, 2011) ("On summary judgment, unauthenticated documents may be considered where it is apparent that they are capable of being reduced to admissible evidence at trial.").

ORDER – 5

## A. Lump sum hire

Section 2.A of the time charter specifies that the lump sum hire of $925,000 is "fully and irrevocably earned upon commencement of services, even if the Tug, Tow, and/or cargo is lost and/or the voyage is delayed, frustrated, or cancelled." Dkt. # 16-1 at 14. Despite this, ChemTrack claims there are two reasons why it cannot be liable for full payment. First, ChemTrack argues that Heko failed to provide the "entirety of the deck space" on the barge, which denied ChemTrack of the quintessential bargain between the parties. Dkt. # 17 at 19. Second, ChemTrack claims that Heko failed to provide an adequately-sized barge to move its 7,400 tons of soil. *Id.*

Neither of these contentions have merit. Section 1 of the time charter explicitly states that ChemTrack would be able to use the entirety of the deck space "subject to capacity, loadline, safety and similar limitations, as well as all fitting, gear and equipment aboard the Barge at delivery." Dkt. # 16-1. While it is axiomatic that a material breach of an agreement warrants rescission, *see Coughlin v. Trans World Airlines, Inc.*, 847 F.2d 1432 (9th Cir. 1988), this unambiguous contract language makes clear that failing to provide the entire deck space is not a material breach. The argument also fails given the testimony from ChemTrack's on site supervisor, who stated that the presence of the cranes reduced the expected available space from 15,000 square feet to 13,000 square feet. Dkt. # 18, ¶¶ 8, 9. The plain language of the time charter also precludes ChemTrack's *ex post* argument about the barge size. Section 4.B states that, "[u]pon [ChemTrack's] acceptance of the Vessels or upon the commencement of first loading of cargoes, whichever shall first occur, it shall be deemed acknowledged by [ChemTrack] that the Vessels, including their fittings, gear, and equipment, are in all respects suitable and fit for the intended services." Dkt. # 16-1. ChemTrack has produced no evidence to otherwise preclude summary judgment on this issue. Accordingly, the motion is granted.

## B. Demurrage costs

Demurrage is the amount of liquidated damages owed by a charterer to a shipowner

ORDER – 6

to load or unload cargo within an agreed time. *See Teras Chartering, LLC v. Hyupjin Shipping Co., Ltd.*, 2017 WL 2363632, at \*1 (W.D. Wash. May 31, 2017) (citing Thomas J. Schoenbaum & Jessica L. McClellan, *Admiralty & Mar. Law* § 11-15 (5th ed. 2012)). Here, the time charter specified two days, or 48 consecutive hours, for ChemTrack to load its cargo in Naknek before a $750 per hour rate applied. Dkt. # 16-1 at 13. It also specified that ChemTrack would have 3 days, or 72 consecutive hours, to offload the cargo in Elliot's Bay before a $200 per rate applied. *Id*. Heko claims that ChemTrack owes demurrage in the amount of $28,500 related to cargo loading in Naknek and $39,000 related to cargo offloading in Elliot's Bay. Heko also claims that ChemTrack is liable for demurrage in the amount of $268,000 due to reloading in Sand Point.

"Despite the existence of a demurrage clause, however, such penalty can only be claimed if the shipowner can demonstrate that he has suffered actual damage as a result of the charterer's delay." *See* 2A *Benedict on Admiralty*, § 201, at 18-1 (2019); *D'Amico v. Mediterranean Pacific Line, Ltd.*, 1975 A.M.C. 98 (N.D. Cal. 1974) (rejecting argument that plaintiff shipowner was entitled to demurrage regardless of whether or not actual damages are shown. The burden is upon the shipowner to prove the extent of damages sustained by him. *See id.* (citing cases). As evidence, Heko only offers invoices that illustrate the amount of time ChemTrack spent loading and unloading the barge, but otherwise fails to demonstrate actual damages. *See, e.g.*, Dkt. # 16-2 at 2, 6-7. Because this is insufficient to carry the burden on summary judgment, Heko's motion on this issue is denied.

### C.    Fuel costs

Section 2.B of the time charter states: "Fuel and lubricating oils are deemed included within the lump sum hire amounts, subject to increases to a baseline fuel cost/gallon of $1.80. An adjustment will be made for increases to cost/gallon based upon the average cost/gallon of the actual quantity consumed, which will be invoiced upon completion of the voyage." Dkt. # 16-1 at 14.

ORDER – 7

Heko claims that this section entitles it to fuel costs from ChemTrack, including fuel costs stemming from the diversion. However, ChemTrack argues that summary judgment is inappropriate since facts are in dispute related to the cause of the diversion. Ultimately, it is unclear to the Court whether the parties contemplated section 2.B. would apply in all situations, including where diversion of the barge occurs. *See Starrag*, 486 F.3d at 616 (affirming judgment where plain language made clear that clause in charter applied to circumstances at issue). Indeed, the parties could have reasonably intended for situations like diversions to fall under section 6.A.(2), which states that, "as to any matter not specifically addressed in this agreement, each party shall be responsible for all loss, damage, expense, liability, claim and/or suit to the extent of its proportionate degree of fault or legal liability." Dkt. # 16-1 at 16. Because the time charter could reasonably be interpreted each way, the Court finds that there is a factual controversy regarding the parties' intent and that summary judgment is inappropriate.

## D. Costs and expenses

Section 2.D of time charter states that, "Charterer shall be responsible for all charges and expenses accruing during the charter term and relating to the Vessels, the cargoes and/or the services being provided pursuant to this agreement, including, without limitation, all customs, port, harbor entrance, dockage, wharfage, pilotage, assist towage, loading/unloading and similar charges." Dkt. # 16-1 at 14. However, as ChemTrack points out, a separate section of the time charter states that wharfage and dockage in Naknek is included as part of the lump sum hire. *Id.* at 13

Because only one interpretation renders effect to all provisions, the time charter is not ambiguous regarding liability for these costs and expenses. *Cf.* 11 Williston on Contracts § 32:5 (4th ed. 2015) ("An interpretation which gives effect to all provisions of the contract is preferred to one which renders part of the writing superfluous, useless or inexplicable."). The time charter allocates responsibility for all charges and expenses accruing during the charter term and relating to the Vessels, the cargoes and/or the services

ORDER – 8

being provided to ChemTrack, except for wharfing and docking at Neknek. Unlike the section 2.B of the time charter (regarding fuel costs), section 2.D. contains the specific language of "accruing during the charter term."

However, Heko has failed to affirmatively demonstrate that no reasonable trier of fact could find for ChemTrack on the amount of damages sought. Heko presents a lone invoice on the costs and expenses for which it seeks damages. Dkt. # 16-2 at 13. ChemTrack argues that it does not bear responsibility for the costs of moving soil or equipment belonging to other third parties. Dkt. # 17 at 22. When the nonmoving party has raised a genuine issue of material fact and the evidentiary matter in support of the motion for summary judgment does not establish the absence of the genuine issue, the nonmoving party is not required to present opposing evidentiary material. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1508 n. 1 (9th Cir. 1984). Giving that it is undisputed that the barge carried equipment and soil related to other parties, Heko's lone invoice fails to establish such an absence of a genuine issue regarding damages. Heko's motion is granted in part and denied in part.

### E. Costs related to cargo handling

Section 2.C of the time charter states that, "[i]f Tug crewmembers are requested by Charterer and/or required by special circumstances to assist with cargo handling and related tasks, then section 5, below, shall apply and Charterer shall pay the 'CARGO TIME' rate identified on the first page of this agreement for each such crewmember assisting with such cargo handling and related tasks." The time charter indicates the "CARGO TIME" rate as $80 per man hour. This Court finds this section to be unambiguous.

As with its costs and expenses, Heko fails to meet its burden with respect to damages. Heko submitted one invoice and concurring time entries in support of its damages. Some of the entries specify that work was done "as directed by Chemtrack," while others suggest work being done for Heko. *See, e.g.*, Dkt. # 16-2 at 15. ChemTrack contends that some of the billed entries relate to crew work done for Heko, including

ORDER – 9

moving and stowing Heko's cranes. Dkt. # 19-1 at 25. Crew members testified that they did in fact complete some work on the barge at Heko's direction. Dkt. # 19-1 at, 25, 49; *see also* Dkt. # 23-3 at 5 (regarding work done at Sand Point moving crane parts). Viewing the evidence in a light most favorable to the non-moving party, Heko fails to meet its burden on damages. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007). Heko's motion is granted in part and denied in part.

F.     **Costs for damages during offloading**

Heko also claims that ChemTrack is liable for damage to the barge during unloading. Section 4.A of the time charter states that, "Charterer further warrants that the loading, stowage, trimming, securing and discharging of cargoes shall be conducted without any loss or damage whatsoever to the Vessels, including their fitting, gear and equipment." Dkt. # 16-1 at 15. In support of its motion, Heko submits one declaration which states, "[d]uring the offload in Seattle, the barge and loader incurred damaged." Dkt. # 16-2 at 3. While relevant, this evidence is insufficient to establish the absence of the genuine issue. *Menhorn v. Firestone Tire & Rubber Co.*, 738 F.2d 1496, 1508 n. 1 (9th Cir. 1984). Accordingly, the Court declines to grant summary judgment on this issue.

G.     **ChemTrack's counterclaims**

Heko also moves for summary judgement on ChemTrack's counterclaims. ChemTrack counterclaimed for damages against Heko for (i) providing a barge configured differently than represented; (ii) carrying cargo for parties other than ChemTrack; (iii) providing a barge not in seaworthy condition; and (iv) for proceeding on the voyage at a time and at a speed that ensured the tug and barge would encounter predicted weather that Heko and/or the Master knew or should have known was unsafe. Dkt. # 13.

The first three bases for ChemTrack's breach of the charter claims are without merit. As discussed above, ChemTrack acknowledged that the barge was suitable for the voyage upon first loading the soil. Dkt. # 16-1 at 15. Finally, it is unclear which section of the ChemTrack seeks to invoke for its claim that Heko breached the charter by knowingly

ORDER – 10

proceeding into unsafe weather.  Nonetheless, as Heko points out, this claim is barred by section 6.A.(2).  Specifically, section 6.A.(2) states explicitly that ChemTrack is responsible for all loss, damage, expense, liability, claim and/or suit applicable to the cargoes "howsoever caused and even if resulting from the negligence or other legal fault of the Owner." *Id.* at 16.  Accordingly, the Court grants summary judgment to Heko.

## V.  CONCLUSION

For the reasons below, Heko's motion is **GRANTED in part** and **DENIED in part**.  Dkt. # 15.

DATED this 19th day of November, 2019.

_____
The Honorable Richard A. Jones
United States District Judge

ORDER – 11